# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TATIANA ANDREA AREVALO ALZATE,<br><br>Petitioner,<br><br>v.<br><br>CHRISTOPHER CHESTNUT, et al.,<br><br>Respondents. | Case No. 1:25-cv-1848-SAB-HC<br><br>ORDER GRANTING PETITION FOR WRIT OF HABEAS CORPUS, DENYING MOTION FOR TEMPORARY RESTRAINING ORDER AS MOOT, DENYING RESPONDENTS' MOTION TO DISMISS, DIRECTING RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER, AND DIRECTING RESPONDENTS TO FILE STATUS REPORT<br><br>(ECF Nos. 1, 3, 8) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States magistrate judge. (ECF Nos. 7, 10, 11.)

**I.**

**BACKGROUND**

Petitioner is a citizen of Colombia. Petitioner arrived in the United States on July 2, 2023, seeking admission as a B-2 visitor. Upon arrival, Petitioner was questioned by a Customs and Border Patrol officer, who, after the interview, determined that Petitioner had allegedly violated the terms of her visa during a prior entry into the United States. Petitioner's visa was canceled. (ECF No. 1 at 6; ECF No. 8-1 at 2.) Petitioner expressed her fear of returning to Colombia, due to death threats and physical harm she received at the hands of her ex-partner. (ECF No. 1 at 6.)

Petitioner was processed as an expedited removal with a credible fear. (ECF No. 8-1 at 2, 9.) On July 10, 2023, Petitioner was interviewed by an asylum officer with U.S. Citizenship and Immigration Services, and a credible fear of persecution was found. (ECF No. 1 at 6; ECF No. 8-1 at 2.) On July 12, 2023, the Department of Homeland Security ("DHS") a Notice to Appear ("NTA"), charging Petitioner with removability under section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act ("INA"). (ECF No. 8-1 at 27.) On July 26, 2023, Petitioner was granted parole with a bond amount of $10,000, and on July 28, 2023, she was released on supervision with Alternatives to Detention ("ATD")/SmartLink. (ECF No. 1 at 6; ECF No. 8-1 at 3.) Since her release in 2023, Petitioner has resided in Sunnyvale, California, and has been gainfully employed in the San Francisco Bay Area. (ECF No. 1 at 6.)

On September 6, 2023, Petitioner submitted an application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). The immigration court in San Francisco set a master calendar hearing date of July 27, 2028 at 9:00 a.m. for Petitioner. Petitioner alleges that she has attended all of her previously-scheduled immigration hearings. (ECF No. 1 at 6.)

On or about February 2, 2024, Petitioner was placed on the Intensive Supervision Appearance Program ("ISAP"). (ECF No. 8-1 at 3.) Petitioner alleges that she reasonably complied with the reporting requirements. (ECF No. 1 at 6.) A few weeks before her current detention, U.S. Immigration and Customs Enforcement ("ICE") officers had placed an ankle bracelet on Petitioner as a monitoring and tracking device. She was detained by ICE officers while at a check-in appointment with ICE officers on December 10, 2025. The petition alleges that at the interview the ICE officer stated that due to a change in policy, individuals under supervision with ankle bracelets were going to be detained and remain in custody to finish their case,[1] but if Petitioner wished, she could request to be removed before completion of her asylum case. (ECF No. 1 at 6–7.)

///

---

[1] Respondents submitted a declaration of a deportation officer that states "Petitioner was arrested by ICE officers for violating her supervision[.]" (ECF No. 8-1 at 3.)

On December 15, 2025, Petitioner filed a petition for writ of habeas corpus and a motion for temporary restraining order ("TRO"). (ECF Nos. 1, 3.) On December 16, 2025, the assigned district judge set a briefing schedule and ordered the parties to indicate whether they request a hearing and whether they agree to convert the request for a TRO into a preliminary injunction without further briefing. (ECF No. 4.) On December 23, 2025, Respondents filed a "streamlined opposition," "waive[d] oral argument," and "do not oppose the Court resolving the motion for temporary restraining order and the underlying habeas petition all at once based on the parties' briefings on this motion." (ECF No. 8 at 2.) On December 26, 2025, Petitioner filed a reply, in which Petitioner indicates that a hearing is not requested and that "Petitioner respectfully submits that this Court should grant the temporary restraining order in Petitioner's case, or in the alternative, grant a preliminary injunction in Petitioner's case. Petitioner also respectfully submits that her petition for a writ of habeas corpus should be granted, and Petitioner released from custody immediately." (ECF No. 9 at 5.)

Accordingly, the Court will advance the merits determination and consolidate it with the resolution of the preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a)(2), which provides that "[b]efore or after beginning the hearing on a motion for a preliminary injunction, the court may advance the trial on the merits and consolidate it with the hearing." Fed. R. Civ. P. 65(a)(2). See Dzhabrailov v. Decker, No. 20-CV-3118 (PMH), 2020 WL 2731966, at *4 (S.D.N.Y. May 26, 2020) (considering preliminary injunction and merits of habeas petition simultaneously).

## II.

## DISCUSSION

### A. Statutory Framework

An intricate statutory scheme governs the detention of noncitizens during removal proceedings and after a final removal order is issued. "Where an alien falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008).

1   "Four statutes grant the Government authority to detain noncitizens who have been
2   placed in removal proceedings: 8 U.S.C. §§ 1225(b) ('Section 1225(b)'), 1226(a) ('Subsection
3   A'), 1226(c) ('Subsection C'), and 1231(a) ('Section 1231(a)')." Avilez v. Garland, 69 F.4th
4   525, 529 (9th Cir. 2023). "Subsection A is the default detention statute for noncitizens in
5   removal proceedings and applies to noncitizens '[e]xcept as provided in [Subsection C].'"[2]
6   Avilez, 69 F.4th at 529 (alterations in original) (quoting 8 U.S.C. § 1226(a)). "[D]etention under
7   Subsection A is discretionary" and "provides for release on bond or conditional parole." Avilez,
8   69 F.4th at 529. "When a person is apprehended under § 1226(a), an ICE officer makes the initial
9   custody determination," and the noncitizen "will be released if he 'demonstrate[s] to the
10  satisfaction of the officer that such release would not pose a danger to property or persons, and
11  that the alien is likely to appear for any future proceeding.'" Rodriguez Diaz v. Garland, 53 F.4th
12  1189, 1196 (9th Cir. 2022) (quoting 8 C.F.R. § 236.1(c)(8)).

13  "[A]n alien who 'arrives in the United States,' or 'is present' in this country but 'has not
14  been admitted,' is treated as 'an applicant for admission.'" Jennings v. Rodriguez, 583 U.S. 281,
15  287 (2018) (quoting 8 U.S.C. § 1225(a)(1)). "Applicants for admission must 'be inspected by
16  immigration officers' to ensure that they may be admitted into the country consistent with U.S.
17  immigration law." Jennings, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(a)(3)). "[A]pplicants for
18  admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by
19  § 1225(b)(2)." Jennings, 583 U.S. at 287. "Both § 1225(b)(1) and § 1225(b)(2) authorize the
20  detention of certain aliens." Id.

21  "Section 1225(b)(1) applies to aliens initially determined to be inadmissible due to fraud,
22  misrepresentation, or lack of valid documentation. Section 1225(b)(1) also applies to certain
23  other aliens designated by the Attorney General in his discretion." Jennings, 583 U.S. at 287
24  (citations omitted). "Aliens covered by § 1225(b)(1) are normally ordered removed 'without
25  further hearing or review' pursuant to an expedited removal process." Id. (quoting 8 U.S.C.

---

[2] Subsection C, which is not at issue here, "provides for the detention of 'criminal aliens' and states that '[t]he Attorney General shall take into custody any alien who' is deportable or inadmissible based on a qualifying, enumerated offense." Avilez, 69 F.4th at 530 (alteration in original) (quoting 8 U.S.C. § 1226(c)).

§ 1225(b)(1)(A)(i)). "But if a § 1225(b)(1) alien 'indicates either an intention to apply for asylum ... or a fear of persecution,' then that alien is referred for an asylum interview." Jennings, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(b)(1)(A)(ii)). "If an immigration officer determines after that interview that the alien has a credible fear of persecution, 'the alien shall be detained for further consideration of the application for asylum.'" Jennings, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(b)(1)(B)(ii)).

Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A). Thus, "[a]ll applicants for admission who are not processed for expedited removal [pursuant to § 1225(b)(1)] are placed in regular removal proceedings under § 1225(b)(2)(A). That process generally entails a hearing before an immigration judge pursuant to § 1229a." Innovation Law Lab v. McAleenan, 924 F.3d 503, 507 (9th Cir. 2019).

"Regardless of which of those two sections authorizes their detention, applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" Jennings, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)) (citing 8 C.F.R. §§ 212.5(b), 235.3 (2017)). "Such parole, however, 'shall not be regarded as an admission of the alien.'" Jennings, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)). "Instead, when the purpose of the parole has been served, 'the alien shall forthwith return or be returned to the custody from which he was paroled and thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States.'" Jennings, 583 U.S. at 288 (quoting 8 U.S.C. § 1182(d)(5)(A)).

**B. Due Process**

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Even when the government has discretion to detain an individual, its subsequent decision to release the individual creates 'an implicit promise' that she

5

will be re-detained only if she violates the conditions of her release." Garro Pinchi v. Noem, No. 25-CV-05632-PCP, --- F. Supp. 3d. ----, 2025 WL 3691938, at *30 (N.D. Cal. Dec. 19, 2025) (citing Morrissey v. Brewer, 408 U.S. 471, 482 (1972)). "Other courts, including this Court, have held similarly." J.E.H.G. v. Chestnut, No. 1:25-cv-01673-JLT-SKO, 2025 WL 3523108, at *10 (E.D. Cal. Dec. 9, 2025) (citing Doe v. Becerra, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *4 (E.D. Cal. Mar. 3, 2025)). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in remaining out of custody." Salcedo Aceros v. Kaiser, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). Regardless of whether mandatory detention under § 1225(b) is facially constitutional, and "[e]ven assuming Respondents are correct that § 1225(b) is the applicable detention authority for all 'applicants for admission,' Respondents fail to contend with the liberty interest created by the fact that the Petitioner in this case was released[.]" J.E.H.G., 2025 WL 3523108, at *10.

"Many district courts in the Ninth Circuit have found that non-citizens paroled into the United States pursuant to § 1182(d)(5) have a liberty interest in their continued release, entitling them to certain due process protections, the extent of which are determined by applying the test provided in *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)." Rocha Chavarria v. Chestnut, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606, at *3 (E.D. Cal. Dec. 9, 2025). See D. L.C. v. Wofford, No. 1:25-cv-01996-DC-JDP (HC), 2026 WL 25511, at *4 (E.D. Cal. Jan. 5, 2026) ("Following *Pinchi*, a substantial number of district courts in the Ninth Circuit have found that noncitizens paroled into the United States under § 1182(d)(5) have a liberty interest in their continued release and are entitled to certain due process protections.").

"Thus, the Court must evaluate the three-part test set forth in *Mathews v. Eldridge,* 424 U.S. 319, 334-335 (1976), to determine whether the procedures (or lack thereof) that have been applied to Petitioner are sufficient to protect the liberty interest at issue." J.E.H.G., 2025 WL 3523108, at *11.

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors. First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such

   interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

  As to private interest, it "is beyond dispute" that Petitioner's interest here is "fundamental." Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (citing Foucha v. Louisiana, 504 U.S. 71, 80 (1992)). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty [the Due Process] Clause protects." Zadvydas, 533 U.S. at 690. "Second, the risk of erroneous deprivation is high when, as here, parole is revoked without written notice or reason." Rocha Chavarria, 2025 WL 3533606, at *4. See Kakkar v. Chestnut, No. 1:25-CV-1627 JLT SAB, 2025 WL 3638298, at *7 (E.D. Cal. Dec. 15, 2025) ("Turning to the second factor, the risk of erroneous deprivation of Petitioner's liberty is high where, as here, '[the petitioner] has not received [and will not receive] any bond or custody redetermination hearing.'" (alterations in original) (quoting A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO, 2025 WL 1424382, at *5 (E.D. Cal. May 16, 2025))). "Finally, as other courts have done, this Court concludes that the government's interest in detaining Petitioner without proper process is slight." J.E.H.G., 2025 WL 3523108, at *12. Accordingly, the Mathews factors weigh in favor of a bond hearing.

  Based on the foregoing, the Court finds that Petitioner has a protected liberty interest in remaining out of custody and that her re-detention without a bond hearing violates due process.[3] The Court now turns to whether a pre-deprivation or post-deprivation hearing is appropriate in this case.

  The Supreme "Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." Zinermon v. Burch, 494 U.S. 113, 127 (1990) (emphasis in original). Although "there may be situations that urgently require arrest, in which a prompt post-deprivation hearing is appropriate . . . absent evidence of urgent

---

[3] In light of this conclusion, the Court declines to address Count Two and whether Petitioner's detention violates the Administrative Procedure Act, 8 U.S.C. § 1226, and federal regulations.

concerns, a *pre*-deprivation hearing is required to satisfy due process, particularly where an individual has been released on bond by an IJ." Guillermo M. R. v. Kaiser, 791 F. Supp. 3d 1021, 1036 (N.D. Cal. 2025) (citations omitted).

Here, Respondents have submitted a declaration of a deportation officer, which states: "Petitioner violated her conditions of release several times from December 2024 through October 2025 by failing to complete self-reported check-ins," and on "December 10, 2025, Petitioner was arrested by ICE officers for violating her supervision and her bond was cancelled." (ECF No. 8-1 at 3.) However, Respondents provide no supporting evidence or additional details regarding these alleged violations other than conclusory statements.[4] Petitioner contends that she has "reasonably complied with the reporting requirements" and notes there is "no independent evidence that Petitioner missed any specific check-in appointments or failed to complete a SmartLINK check in requirement, nor specific dates that she allegedly failed to do so." (ECF No. 1 at 6; ECF No. 9 at 3.) Further, Petitioner has no criminal history, (ECF No. 1 at 7), and Respondents do not argue that Petitioner is now considered a flight risk or danger to the community based on any alleged violations of her conditions of release. Accordingly, the Court finds that a pre-deprivation hearing is appropriate based on the facts of this case, and that "the burden at any such hearing [be placed] on the government to demonstrate to a neutral decisionmaker by clear and convincing evidence that re-detention is necessary to prevent danger to the community or flight." J.E.H.G., 2025 WL 3523108, at *14 (citing Pinchi v. Noem, 792 F. Supp. 3d 1025, 2025 WL 2084921, at *7 (N.D. Cal. 2025)). See J.E.H.G., 2025 WL 3523108, at *14 ("[T]he immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention.").

---

[4] Such conclusory facts/statements go to the veracity of the declarant's statement and the ability of the opposing side to address the proffered facts. Declaration should be much different that "playground" accusations: facts stating which dates petitioner failed to self-check and accompanied by the documentation upon which the declarant is relying.

## III.

## ORDER

Based on the foregoing, the Court HEREBY ORDERS that:

1. The petition for writ of habeas corpus is GRANTED on Count One;
2. Petitioner's motion for temporary restraining order (ECF No. 3) is DENIED as moot;
3. Respondents' motion to dismiss (ECF No. 8) is DENIED;
4. Respondents are DIRECTED to IMMEDIATELY RELEASE Petitioner on the same conditions she was subject to immediately prior to her detention on December 10, 2025;
5. Respondents are ENJOINED and RESTRAINED from re-detaining Petitioner absent written notice and a pre-detention hearing before a neutral adjudicator where the government must demonstrate by clear and convincing evidence that re-detention is necessary to prevent danger to the community or flight; and
6. On or before January 19, 2026, Respondents shall file a status report with the Court confirming that Petitioner has been released.

IT IS SO ORDERED.

Dated:   **January 14, 2026**

STANLEY A. BOONE
United States Magistrate Judge